UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STORMIE H.,

                    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

**DECISION AND ORDER**

6:23-cv-06619-EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Stormie H. ("Plaintiff") brings this action pursuant to Title II and Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits.  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[1]  (Dkt. 8; Dkt.

---

[1]    Plaintiff filed her motion as a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rule of Civil Procedure, in which she references the September 5, 2013, Standing Order signed by Hon. William Skretny, as well as Loc. R. Civ. P. 5.5.  (Dkt. 8 at 1);    *see*    https://www.nywd.uscourts.gov/sites/nywd/files/SS-2013-110%20In%20the%20Matter%20of%20Seeking%20Review%20of%20the%20Commisioner%20of%20SS%27s%20Final%20Decisions%20Denying%20SS%20Benefits%2C%209-6-2013.pdf.  That Standing Order is no longer in effect and has been superseded by Loc.

12).   For the reasons discussed below, Plaintiff's motion (Dkt. 8) is denied and the Commissioner's motion (Dkt. 12) is granted.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on April 5, 2021.[2]   (Dkt. 7 at 80, 82, 101, 102).   In her applications, Plaintiff alleged disability beginning March 29, 2021.   (*Id.* at 81-82, 102-03).   Plaintiff's applications were initially denied on August 3, 2021, and then denied upon reconsideration on December 1, 2021.   (*Id.* at 81-100, 102-21, 123-39, 141-57).   At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Tracy LaChance on March 31, 2022.   (*Id.* at 48-79).   On July 5, 2022, the ALJ issued an unfavorable decision denying Plaintiff's claims.   (*Id.* at 19-47).   Plaintiff then requested review by the Appeals Council, which the Council denied on August 31, 2023, making the ALJ's determination the final decision of the Commissioner.   (*Id.* at 5-10).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by

_____

R. Civ. P. 5.5.   Additionally, Plaintiff's motion was not filed in compliance with Loc. R. Civ. P. 56(a)(1).   The Court will convert Plaintiff's Motion for Summary Judgment into a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c).

[2]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Hum. Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in

substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).[3]  If so, the claimant is not

disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an

impairment, or combination of impairments, that is "severe" within the meaning of the Act,

in that it imposes significant restrictions on the claimant's ability to perform basic work

activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If

the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or

medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1529), the

claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity

("RFC"), which is the ability to perform physical or mental work activities on a sustained

basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits

the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).

If the claimant can perform such requirements, then he or she is not disabled.  If he or she

cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the

---

[3]      Because DIB and SSI regulations mirror each other, the Court will just reference the
DIB regulations in its analysis.

Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.   The ALJ's Decision

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis set forth in 20 C.F.R. § 404.1520 and determined that Plaintiff met the insured status requirements of the Act through September 30, 2025. (Dkt. 7 at 25). At step one of the analysis, the ALJ opined that Plaintiff had not engaged in substantial gainful work activity since March 29, 2021, the amended alleged onset date. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: degenerative disc disease of the lumbar spine, peripheral neuropathy, osteoarthritis, status post gunshot wound, obesity, anxiety disorder, and post-traumatic stress disorder ("PTSD"). (*Id*.). She also determined that Plaintiff's gastroesophageal reflux disorder ("GERD") and a thyroid disorder were nonsevere impairments. (*Id*.).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 25-28). Before proceeding to step four, the ALJ concluded that Plaintiff retained the

RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with additional limitations. (*Id.* at 28). The ALJ determined that Plaintiff could stand and walk in combination up to four hours and sit up to six hours in an eight-hour workday; can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; and must avoid work around unprotected heights and dangerous machinery or concentrated exposure to extreme cold and heat, and humidity. (*Id.*). The ALJ also determined that Plaintiff can frequently reach with the bilateral upper extremities. Lastly, the ALJ found that Plaintiff was limited to performing simple tasks in two-hour periods over a typical workday and workweek, and that she can tolerate occasional interaction with the public and coworkers, and occasional change in work routine. (*Id.*).

At step four, the ALJ found that Plaintiff had been unable to perform any past relevant work. (*Id.* at 38). Considering Plaintiff's age, education, and work experience, as well as the VE's testimony, the ALJ found that there were jobs that existed in significant numbers in the national economy, such as a photocopy machine operator, mail clerk, and retail marker that Plaintiff could perform. (*Id.* at 40). As a result, the ALJ concluded that Plaintiff was not disabled from the alleged onset date of March 29, 2021, through the date of her decision. (*Id.* at 40).

II.   **The ALJ Determination is Supported by Substantial Evidence.**

Plaintiff challenges the ALJ's failure at step two to find her complex regional pain syndrome ("CRPS") a severe impairment under the guidance of Social Security Ruling ("SSR") 03-02p.  (Dkt. 8-1 at 5-10).  For the reasons discussed below, the Court finds Plaintiff's argument without merit.

As a general matter, in step two of the analysis, the ALJ is required to determine whether an impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least 12 months limits claimant's physical or mental ability to perform basic work activities.  *See* 20 C.F.R. § 404.1505.  Although Plaintiff bears the burden of proof at step two, it is not a heavy burden.  The Second Circuit has long held that "the standard for a finding of severity under [s]tep [t]wo of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)).  Despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (internal citation omitted); *see also Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) ("mere diagnosis of [an impairment] without a finding as to the severity of symptoms and limitations does not mandate a finding of disability") (citation omitted).  Indeed, "[a]n impairment or combination of impairments is found 'not severe'

- 7 -

and a finding of 'not disabled' is made at [step two] when medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985). Such determination is made after the ALJ carefully evaluates the medical findings that describe the impairment and makes "an informed judgment about its limiting effects on the individual's physical and mental ability to perform basic work activities" such as walking, standing, sitting, lifting, pushing, pulling, and others. *Id.* at *3-4. Regardless of how genuine the claimant's complaints about her symptoms may appear to be, the regulations prescribe for the ALJ to find the claimant not disabled at step two of the analysis in the absence of medical signs or laboratory findings demonstrating that there is a medically determinable physical or mental impairment. *See* SSR 16-3p, 2017 WL 5180304, at *3 (S.S.R. Oct. 25, 2017).

Here, at step two of the analysis, the Commissioner found that Plaintiff suffered several severe impairments—degenerative disc disease of the lumbar spine, peripheral neuropathy, osteoarthritis, status post gunshot wound, obesity, anxiety disorder, and PTSD. (Dkt. 7 at 25). Plaintiff argues that the ALJ should have also found her CRPS to be severe because her treating pain management physician Muhammad Jalaluddin, M.D. ("Dr. Jalaluddin") diagnosed her with this condition during the course of her treatment. (Dkt. 8-1 at 5-6, 9). Plaintiff submits that such failure to recognize CRPS as a severe impairment directly contradicted the language of SSR 03-2p, which the ALJ was required to recognize

in her decision and tainted the ALJ's analysis in the subsequent steps.  (*Id*. at 7-10).  The
Court disagrees.

SSR 03-2p, "Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic
Dystrophy Syndrome/Complex Regional Pain Syndrome," 2003 WL 22399117 (Oct. 20,
2003), defines CRPS as a "constellation of symptoms and signs that may occur following
an injury to bone or soft tissue," which manifests itself through complaints of intense pain
typically localized to the site of the injury and results in autonomic dysfunction at the site
of the precipitated trauma.  *Id*. at *1.  Individuals diagnosed with CRPS often report the
degree of pain at the site of the injury that is out of proportion to the severity of the injury
due to the abnormal function of the sympathetic nervous system that is impacted by the
trauma, and may complain about muscle pain, joint swelling, restricted mobility, or
abnormal hair or nail growth in the affected site.  *Id*. at *1-2.  For CRPS to be qualified as
a medically determinable impairment, an individual must demonstrate the presence of
persistent pain that is typically out of proportion to the severity of the injury and one or
more of the clinically documented signs in the affected region, such as swelling, changes
in skin color, texture, or temperature, changes in sweating, abnormal hair or nail growth,
osteoporosis, or involuntary movements of the affected site of the injury.  *Id*. at *4.  "When
longitudinal treatment records document persistent limiting pain in an area where one or
more of these abnormal signs has been documented at some point in time since the date of
the precipitating injury, disability adjudicators can reliably determine that CRPS is present

and constitutes a medically determinable impairment." *Id.*  Because transient findings are often present when an individual is diagnosed with CRPS, the individual's treatment records may not reflect the signs of the impairment continuously.  *Id.*

In support of her argument, Plaintiff relies on the notes of the only physician of record who diagnosed her with CPRS—her pain management specialist Dr. Jalaluddin. (Dkt. 8-1 at).  Dr. Jalaluddin treated Plaintiff from May 2020 through February 2022, when he repeatedly diagnosed her with CRPS of both legs, as well as a variety of other chronic conditions, such as neuropathic low back pain, chronic pain syndrome, pain in both legs, feet and shoulders, and neuralgia that developed as a result of the gunshot injury Plaintiff suffered in 2008.[4]  (Dkt. 7 at 391-76, 559-86).  Dr. Jalaluddin's treatment records revealed that although Plaintiff had recovered from the injury, she continued to have neuropathic low back, low leg, and feet pain that was worse during back movements, standing, and walking, and exhibited restricted single leg raise, loss of hair on her legs, as well as purple discoloration and coldness of her lower legs and feet.  (*Id.*).  Dr. Jalaluddin noted that Plaintiff's chronic back and leg pain was "likely due to CRPS, lumbar radiculopathy, lumbar spondylitis, and chronic pain syndrome."  (*Id.*).  In March 2022, Dr. Jalaluddin issued an opinion in which he indicated that due to CRPS of her legs, chronic pain syndrome, neurostimulator, and anxiety, Plaintiff was limited in her ability to sit, stand,

---

[4]      Plaintiff indicated that she sustained a gunshot wound in 2008, although Dr. Jalaluddin's treatment records, as well as the opinions of the State Agency evaluators, refer to 2010 as the year when Plaintiff suffered the injury.  (*Id.* at 91, 135, 153, 320).

walk, lift, and carry objects during a workday, and, as such, would likely miss more than four days per month due to her impairments.  (*Id*. at 587-89).

Because Dr. Jalaluddin's records demonstrate that during his treatment Plaintiff persistently complained about having pain from a gunshot injury in her lower back accompanied by loss of hair, discoloration of skin color, and changes in temperature of her lower legs and feet, the ALJ should have considered Plaintiff's CRPS as a medically determinable impairment according to SSR 03-2p and should have determined whether it had any effect on Plaintiff's ability to perform basic work activities at step two of the analysis.  SSR 03-2p, 2003 WL 22399117*, at *4.  However, the Court does not find the ALJ's failure to do so harmful to warrant remand.  *See Woodmancy v. Colvin*, No. 5:12-CV-991 (GLS), 2013 WL 5567553, at *2 (N.D.N.Y. Oct. 9, 2013), *aff'd*, 577 F. App'x 72 (2d Cir. 2014) ("[T]he omission of an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in her RFC determination.") (internal citation omitted).  Regardless of whether the ALJ would have found the CRPS severe at step two, the circumstances of this case do not warrant remand because the ALJ continued the analysis in the subsequent steps and considered the effect of CRPS, as well as Plaintiff's other impairments, on Plaintiff's RFC.  *See Pacholski v. Berryhill*, No. 17-CV-207-FPG, 2018 WL 3853388, at *3 (W.D.N.Y. Aug. 14, 2018) ("An error at step two—either a failure to make a severity determination regarding an impairment, or an erroneous determination that an impairment is not severe—

can be harmless error if the ALJ continues the analysis and considers all impairments in [his] RFC determination.") (citation omitted); *but see Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (remand is required when the ALJ commits a harmful error of not accounting for non-severe impairments when formulating a claimant's RFC).

As discussed above, Dr. Jalaluddin's treatment notes reveal that Plaintiff's CRPS of her lower legs stemmed from a gunshot wound she sustained several years prior and that the injury, as well as Plaintiff's lumbar radiculopathy, lumbar spondylitis, and chronic pain syndrome, caused, among other things, neuropathic low back, low leg, and feet pain. Plaintiff also indicated that her inability to work was due to neuropathy of her lower legs, neck and back pain, particularly the pain in the area of her back where the bullet lodged and where the nerve stimulator to treat the pain was inserted. (Dkt. 7 at 56, 65-66, 70-72, 320-22). Notably, Plaintiff did not identify CRPS as one of her impairments that caused her any physical or mental limitations. (*Id*. at 285). Even though the ALJ did not explicitly mention CRPS at step two, she considered the symptoms Plaintiff suffered as a result of the gunshot injury, which were separate medically recognizable impairments of degenerative disc disease of the lumber spine, peripheral neuropathy, and status post gunshot, all of which the ALJ found to be severe. (*Id*. at 25). Additionally, because there is no independent listing dedicated to CRPS, the ALJ, at step three of the analysis, properly considered whether Plaintiff's severe impairments qualify for a listing and explicitly

discussed the impairments through the prism of the available listings related to spine disorders, neuropathy, and soft tissue injuries or abnormalities.  (*Id*. at 25-26).

Plaintiff argues that the ALJ should have also evaluated CRPS under the mental health listings, but the only support she offers towards this proposition is the reference to SSR 03-2p, which instructs the ALJ to evaluate the psychological manifestations related to CRPS under the mental disorders listings because CRPS is not a listed impairment.  (Dkt. 8-1 at 7).  While the Ruling instructs an ALJ to do so, SSR 03-2p, 2003 WL 22399117, at *6, the Court does not find any error in the ALJ's consideration of Plaintiff's mental impairments here because the ALJ did precisely what the Ruling required her to do.  She evaluated the records of Plaintiff's mental health professionals who either treated or examined Plaintiff, which revealed that Plaintiff's anxiety and PTSD were associated with a gunshot injury Plaintiff suffered in 2008 because her pain either increased her social anxiety or she was having flashbacks to the day she was shot.  (Dkt. 7 at 312, 486-87, 533, 591, 621).  The ALJ then found Plaintiff's anxiety and PTSD severe and considered both impairments' equivalency with Listings 12.06 and 12.15.  (Dkt. 7 at 26-28).  Accordingly, the ALJ's evaluation of both mental impairments at step three was proper.

At step four, the ALJ recognized Dr. Jalaluddin's opinion and his diagnosis of CRPS as one of Plaintiff's impairments and discussed the physician's findings related to Plaintiff's decreased range of motion and pain in her lumbar back, as well as the findings of the other physicians regarding Plaintiff's history of a gunshot wound, back impairment,

and peripheral neuropathy.  (*Id*. at 31, 36).  Moreover, not only did the ALJ explicitly acknowledge in her opinion Plaintiff's complaints of the increased pain associated with cold or weather changes—one of the clinical signs of CRPS—but she also considered the complaints when she formulated Plaintiff's RFC ultimately restricting her exposure to extreme cold or heat.  (*Id*. at 28).  Therefore, even though the ALJ did not consider Plaintiff's CRPS at step two of the analysis, she identified the impairment and its functional effects, and considered them throughout her analysis in the subsequent steps.  *See Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) (any error to incorporate an impairment into RFC is harmless as long as the ALJ considers the full scope of plaintiff's reported symptoms in finding that she could perform light unskilled work).

Plaintiff also submits that the ALJ should not have relied on the opinions of the consultative examiners in evaluating her CRPS and should have afforded them less weight than the opinions of Plaintiff's treating sources in accordance with SSR 03-2p.  (Dkt. 8-1 at 8-9).  The Court finds Plaintiff's argument contrary to the regulations.

Although Plaintiff is correct to point out that the Ruling advises an ALJ to afford deference to the opinions of treating sources, *see* 2003 WL 22399117, at *5 ("[m]edical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to deference and may be entitled to controlling weight"), this provision clearly conflicts with the regulations for evaluation of medical evidence promulgated by the Commissioner for claims filed after March 27, 2017, and, as such, is

not entitled to deference.  *See* 20 C.F.R. § 404.1520c(a); *Genier v. Astrue*, 298 F. App'x

105, 108 (2d Cir. 2008) ("Social Security rulings are entitled to deference except when they

are plainly erroneous or inconsistent with the Social Security Act.") (internal citation

omitted).

Because Plaintiff's claims were filed after March 27, 2017, the ALJ properly

evaluated the opinion evidence and prior administrative findings in accordance with the

pertinent regulations that require her not to defer any specific evidentiary weight, including

controlling weight, to any medical opinions or prior administrative findings, including

those from a claimant's treating sources.  20 C.F.R. § 404.1520c(a).  Instead of deferring

controlling weight to the opinion of Dr. Jalaluddin as Plaintiff suggests the ALJ should

have done, the ALJ analyzed Dr. Jalaluddin's opinion, as well as the opinions of Plaintiff's

other treating sources, consultative examiners, and the State Agency reviewers, based on

their supportability and consistency with the record—the two most important factors in

evaluation of medical evidence of record provided by the regulations.   20 C.F.R.

§ 404.1520c(b)(2).  While doing so, the ALJ properly found the opinion of Dr. Jalaluddin

unpersuasive because it was unsupported and inconsistent with the record.  (Dkt. 7 at 36).

The ALJ explained her finding by noting the inconsistency of Dr. Jalaluddin's opinion with

his own treatment records, which demonstrated that despite the allegations of severe pain,

Plaintiff presented in a stable matter since she started treatment in May 2020 when she was

working as a machine packager, a medium exertion job.  (*Id*.).  The ALJ also found the

limitations identified by Dr. Jalaluddin unsupported by Plaintiff's reports of 80-90% pain relief that she was receiving from her spinal court stimulator, as well as her reports of months-worth symptom relief from having bilateral shoulder injections.  *See Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (claimant receiving only conservative treatment is evidence that can weigh against allegations of disabling symptoms).

 Plaintiff submits that the ALJ improperly relied on the objective medical evidence to determine the inconsistency of her statements concerning the intensity, persistence, and limiting effects of her CRPS on her functioning, and, instead, should have solicited information from the other sources, such as her neighbors, friends, past employers, and other practitioners with knowledge of Plaintiff's condition to determine the impact of CRPS on her functioning as prescribed by SSR 03-2p.[5]  (Dkt. 8-1 at 8-9).  The Court disagrees.

Consistent with SSR 16-3p and the regulations, the ALJ considered the intensity and persistence of Plaintiff's symptoms and determined the extent they limited her ability to perform work following the two-step process identified by the Commissioner, where she first determined that Plaintiff suffered from several severe impairments and then analyzed whether the impairments would cause any work-related limitations by considering

---

[5]     The portion of SSR 03-2p that discusses assessment of a claimant's credibility that Plaintiff relies on references an outdated SSR 96-7p, which was superseded by SSR 16-3p. *See* SSR 03-02p, 2003 WL 22399117, at *7-8; SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996).

Plaintiff's own statements, medical history, objective medical evidence, medical signs, and laboratory findings, prior work record, as well as the other evidence available in the record. *See* SSR 16-3p, 2017 WL 5180304, at *3; 20 C.F.R. § 404.1529(c).  Specifically, the ALJ evaluated Plaintiff's alleged symptoms by relying on her testimony, treatment records of Dr. Jalaluddin, and the records of Plaintiff's chiropractor, all of which revealed that despite having fragments of a bullet left in her pelvis that caused back and leg pain, Plaintiff was able to control her pain with a nerve stimulator implant that reduced her pain 80-90%, muscle relaxers, chiropractic treatment, nerve medication, and bilateral suprascapular injections.  (Dkt. 7 at 29-30, 389-74, 490-58).  Although Plaintiff complained of having neuropathy of her legs, chronic pain in her back and shoulders, and showed some limitations in the range of motion of her lumbar back and abnormal gait, her presentation was generally stable during her exams where Plaintiff was not in acute distress and demonstrated normal strength and coordination, full range of motion in her cervical spine, no scoliosis, kyphosis, or abnormality in her thoracic spine, and stable joints without paresthesia or numbness, redness, spelling, or effusion.  (*Id*. at 389-74, 479-82, 575-85). X-rays of Plaintiff's spine performed in June 2020 revealed normal results, except for straightening on her cervical spine, slight curvature of thoracic spine, arthropathy, and fragments of a bullet in her pelvis.  (*Id*. at 389-74, 577).  In addition to her effective response to treatment, the ALJ considered Plaintiff's employment during pendency of her claims, as well as her daily activities, such as cooking, cleaning, doing laundry, driving,

grocery shopping, watching television, and taking care of her bird and dogs. (*Id.* at 30, 480, 488); *see Rushford*, 2023 WL 8946622, at *3 (the ALJ properly considered plaintiff's longitudinal mental health examinations, unremarkable musculoskeletal examinations, conservative treatment, and the ability to perform a variety of activities of daily living to discredit plaintiff's subjective testimony); *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) ("[W]ork history is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony.").

Plaintiff's argument that the ALJ was required to reach out to Plaintiff's neighbors, former colleagues, or friends to determine the extent of her limitations also fails. It has been well-recognized that the ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill,* 710 F. App'x 33, 34 (2d Cir. 2018) (internal citations omitted). Plaintiff does not cite what specific evidence was missing from the record or indicate how such evidence would have changed the outcome of the ALJ's determination, and the Court does not find that there was any deficiency in the record that would warrant remand. *See Schillo v. Kajakazi*, 31 F.4th 64, 76 (2d Cir. 2022) (no error to supplement the record where the ALJ considered medical opinions, treatment notes, plaintiff's test results and testimony, and where plaintiff did not identify any missing records that should have been included in the administrative record). Because remand is only warranted where a court is "unable to fathom the ALJ's rationale in relation to [the] evidence in the record,"

*Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982), the Court would not disturb the ALJ's RFC determination so long as the ALJ "afford[ed] an adequate basis for meaningful judicial review, applie[d] the proper legal standards, and . . . supported [her findings] by substantial evidence such that additional analysis would be unnecessary or superfluous." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).   For the reasons stated above, the Court finds that the ALJ here applied proper legal standards and her RFC determination was supported by substantial evidence.   Accordingly, there is no basis for remand or reversal.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted.   The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:       July 30, 2024
             Rochester, New York